UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14125-CIV-ROSENBERG/MAYNARD

STEPHANIE BELL CORTES,

      Plaintiff,

v.

ANDREW SAUL, Commissioner,
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 24)

THIS CAUSE comes before this Court upon the above-referenced Motion.  Having reviewed the Motion (DE 24), Response (DE 26), the administrative record, and having held a hearing on March 30, 2021, the undersigned RECOMMENDS that Plaintiff's Motion (DE 24) be DENIED for the reasons set forth below.

## BACKGROUND

This case involved a determination of Plaintiff Stephanie Bell Cortes' ("Plaintiff") application for disability insurance benefits filed on April 20, 2017. Plaintiff alleged disability beginning on April 20, 2016 due to lupus/SLE, diabetes, fibromyalgia, irritable bowel syndrome, Barrett's Esophagus, asthma, chronic migraines, bilateral keratitis sicca, chronic fatigue syndrome, and hidradenitis suppurativa. R. 187-88.  Plaintiff was 57 years old on her alleged onset date and has a high school education.  R. 183, 188.  Plaintiff's application was denied initially, R. 68, and upon reconsideration, R. 85. Plaintiff requested administrative review of the ALJ's decision. R. 155.  The Appeals Council denied Plaintiff's request, R. 1, which rendered the ALJ's decision

"final."  42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's decision in this case.  DE 1, 24.  Plaintiff has exhausted her administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *see also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance.") (quoting *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached.  *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011).  In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it.  *Dyer*, 395 F.3d at 1210.  It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner.  *Id*.

A claimant must be "disabled" to be eligible for SSI. A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A claimant bears the burden of proving that he is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The Social Security regulations require the ALJ to undertake a five-step, "sequential" evaluation process for determining whether a claimant is disabled. At step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the claimant is engaging in substantial gainful activity, then he or she is not disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). At step two, the ALJ must determine whether the claimant suffers from a medically determinable impairment, or a combination of medically determinable impairments that is "severe". 20 C.F.R. §§404.1520(c), 416.920(c). An impairment is "severe" within the meaning of the regulations if it significantly limits a claimant's ability to perform basic work activities. An impairment is "not severe," however, when medical or other evidence establish just a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect of a claimant's ability to work. *Id*. at §§404.1522, 416.922; Social Security Rulings ("SSRs") 85-28, 16-3p. At step three, the ALJ must determine whether the claimant's impairment(s) meet or equal the criteria of an impairment list under 20 C.F.R. §§ 404, Subpart P, Appendix 1. If so, the claimant is considered disabled; if not, then the analysis proceeds to step four. Step four is a two-prong process where the ALJ must assess: (1) the claimant's residual functional capacity ("RFC") and

(2) the claimant's ability to return to his or her past work.  The regulations define RFC as the most a claimant can still do despite the limitations caused by his or her impairments.  20 C.F.R. §404.1545(a). Once the ALJ determines the RFC, the ALJ must determine whether the claimant has the RFC to perform any past relevant work.  20 C.F.R. §§404.1520(f), 416.920(f).  If the claimant can return to his or her past relevant work, then the plaintiff is not disabled.  If the claimant cannot perform past relevant work, then a prima facie case of disability is established and the analysis proceeds to step five where the burden shifts to the Social Security Administration to show that there is other work in the national economy that the plaintiff can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant is capable of adjusting to other work.   If the claimant can make an adjustment to other work that exists in the national economy, then the claimant is not disabled.  If not, the claimant is considered disabled. 20 C.F.R. §§404.1520(g), 416.920(g).

## DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the AL found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 20, 2016. R. 14. At step two, the ALJ found that Plaintiff had the following severe impairments: lupus, fibromyalgia, osteoarthrosis, migraine headaches, hidradenitis suppurativa, asthma, bilateral keratitis sicca, optic neuropathy and presbyopia, irritable bowel syndrome, and diabetes mellitus. *Id*.  The ALJ did not find Plaintiff's additional impairments to be severe.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1.  R. 16.  At step four, the ALJ found that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she can sit for six hours and stand/walk for four hours in an eight-hour workday. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, and frequently balance. She is limited to occasional exposure to workplace hazards, no exposure to humidity and wetness, and frequent exposure to sustain and concentrated amounts of dust, odors, fumes, and pulmonary irritants as well as vibrating surfaces and tools. She must avoid excessive sunlight, extremely bright lights, or lights significantly brighter than lights typically found in indoor work environments like an office or store. She can frequently reach, handle, finger, and feel.

R. 16.  The ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist and order clerk. R. 21.  Therefore, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act from April 20, 2016 through the date of her decision. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ's decision was not supported by substantial evidence.  DE 24.  Specifically, Plaintiff contends that the ALJ failed to properly assess the opinion evidence in the record, failed to properly assess Plaintiff's alleged symptoms and limitations, and rendered an RFC finding that was not supported by substantial evidence.  Each argument is addressed below.

### I.   Whether the ALJ Failed to Properly Assess the Opinion Evidence in the Record

Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of Social Security regulations for considering and articulating the medical opinions and prior administrative medical findings in this case.  20 C.F.R. § 404.1520c. Under these revised regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. § 404.1520c(a).

When a medical source provides a medical opinion or prior administrative medical finding, the SSA will consider that medical opinion or prior administrative medical finding using certain factors. 20 C.F.R. § 404.1520c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). The ALJ must explain its consideration of supportability and consistency in the decision. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to the extent to which a medical source has articulated support for his or her own opinion, while consistency refers to the relationship between the source's opinion and other evidence in the medical record. On this point, the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "the more consistent a medical opinion(s) or prior administration medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 CFR §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). "In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record – familiar concepts within the framework of Social Security litigation." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, *3 (M.D. Fla. April 6, 2021) (emphasis in original). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July

29, 2019) (*citing*, *inter alia*, 20 CFR § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

### A.    The ALJ's Evaluation of Dr. Rebecca Coleman's Opinion regarding Plaintiff's Mental Impairments

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Rebecca Coleman about Plaintiff's mental health and erred in finding that Plaintiff's depression and anxiety were not "severe" impairments. Defendant contends that substantial evidence supports the ALJ's finding that Dr. Coleman's opinion was not very persuasive.

Plaintiff began seeing Dr. Coleman on May 8, 2018.  R. 1212-17.  On that initial visit, Dr. Coleman completed a bio-psycho-social evaluation.  Plaintiff reported anxiety with persistent worry, depression, and that her activities of daily living were very difficult due to her depression symptoms.  *Id*.  Dr. Coleman diagnosed Plaintiff with "major depressive disorder, recurrent, moderate." R. 1216.  Dr. Coleman's goals for Plaintiff's treatment were: to alleviate Plaintiff's depressed mood and return her to her previous level of effective functioning, for plaintiff to begin bi-weekly treatment,  to refer Plaintiff to a psychiatrist, and for Plaintiff to develop safety plan in case of violence at her home.  R. 1217.  Plaintiff continued to see Dr. Coleman for counseling therapy roughly three times a month between May 2018 and January 31, 2019.  R. 1381.

On January 9, 2019, Dr. Coleman completed a form entitled "Medical Assessment of Ability to do Work-Related Activities (Mental)."  R. 1298.  Dr. Coleman indicated that Plaintiff had a "poor" ability to follow work rules, deal with public, interact with supervisors, deal with work stress, function independently, and maintain attention or concentration.  Plaintiff's ability to

relate to co-workers and use judgment was "fair," her ability to make performance adjustments and make personal/social adjustments was "poor," and her ability to maintain personal appearance was "good." R. 1299. Plaintiff could not remember duties or handle stress. *Id.* Dr. Coleman wrote, "Patient suffers from PTSD grief, depression, anxiety and memory impairment, frequent crying, anhedonia, decreased functioning in daily life." *Id.*

In addressing Dr. Coleman's opinion, the ALJ stated:

> Rebecca Coleman, Ph.D., the claimant's psychologist, opined that the claimant had poor ability to understand, remember, and carry out both simple and complex instructions, behave in an emotionally stable manner, and relate predictability in social situations. (Exhibit 24F). This opinion is not very persuasive based on the treatment record as a whole.

R. 19.

The undersigned sees no error in the ALJ's evaluation of Dr. Coleman's opinion. Neither Dr. Coleman's treatment records or the medical record as a whole supports the severe mental limitations Dr. Coleman assessed. For example, Dr. Coleman wrote that Plaintiff's memory was impaired and that she could not remember work-related duties. Throughout their treatment relationship, however, Dr. Coleman made no mention of Plaintiff having issues with her memory other than indicating that Plaintiff reported a decline in memory in one session on December 5, 2018. R. 1409. Dr. Coleman reported Plaintiff's cognitive functioning as normal on multiple visits between October 2018 and January 2019. R. 1386, 1394, 1398, 1408, 1418. Dr. Coleman also reported that Plaintiff's behavior demonstrated no abnormalities, Plaintiff was not easily distracted, and her thought content revealed no impairments. R. 1402, 1410, 1418, 1422, 1426, 1435, 1443. During her visits with Dr. Coleman, Plaintiff herself often reported having no behavioral or personality-related complaints. R. 1401, 1409, 1417, 1421, 1425, 1432, 1442. Indeed, only eight days after Dr. Coleman opined that Plaintiff suffered from anhedonia, which is

defined as the inability to enjoy things, Plaintiff reported having normal enjoyment of activities, R. 1385.  Dr. Coleman's records also do not support her opinion that Plaintiff is unable to follow work rules, use judgment, deal with stress, maintain concentration, understand, remember, and carry out job instructions of any kind, or behave in an emotionally appropriate manner.  R. 1299.

Dr. Coleman's opinion that Plaintiff was significantly limited by her mental impairments is also inconsistent with objective evidence in the record.  On June 26, 2018, Plaintiff saw psychiatrist Jack Long, M.D. for a new patient evaluation.  R. 1200.  Plaintiff appeared anxious and tearful during her interview.  R. 1200.  Plaintiff reported having a history of depressed mood, elevated anxiety, difficulty sleeping, decreased energy/appetite/motivation, and occasional crying spells.  *Id*.  Plaintiff also reported that doing her work, taking care of things at home, and getting along with other people was "somewhat difficult." R. 1205. Dr. Long's assessment was that plaintiff had "major depressive order, single episode, severe without psychotic features" and chronic post-traumatic stress disorder.  R. 1200.  A standard depression screening showed Plaintiff has clinically significant symptoms.  *Id*.  Despite this assessment, Dr. Long reported Plaintiff was dressed appropriately and cooperative.  She had normal speech, fair eye contact, fair insight/judgment/impulse control, and a coherent and logical thought process. R. 1203.  Dr. Long prescribed Plaintiff various medications to manage her issues. *Id*.

Dr. Long continued to treat Plaintiff about once a month, and though Plaintiff at times reported anxiety and depression with crying spells,  R. 1405, 1413, 1429, 1438, 1446,  Dr. Long often reported that Plaintiff appeared calm and cooperative during the interviews. Her speech was normal, thought process coherent, eye contract fair, and her insight/judgment/impulse control were fair.  R. 1390, 1406, 1414, 1430,1439, 1448.  During a follow up appointment on January 16, 2019, Plaintiff reported that her mood had improved a bit and that she only had occasional instances of

elevated anxiety. R. 1389. Several other doctors who treated Plaintiff for physical conditions also noted Plaintiff exhibited normal, appropriate, or alert behavior, judgment or thought content. R. 662, 741, 883, 1042, 1108, 1338, 1462, 1517. Notes from Plaintiff's primary care physician at the Digestive and Live Center of Florida Amir Guirguis, M.D. documenting Plaintiff's visits on September 2016, December 2016, and April 2017 noted that Plaintiff had no memory loss, confusion, depression, anxiety, tension, stress, or sleep disturbances. R. 582, 589, 610.

On August 9, 2017, during the initial review of Plaintiff's application for disability insurance benefits, state agency consultant Jane Cormier, Ph.D reviewed Plaintiff's records. Based on this review, Dr. Cormier opined that Plaintiff had mild limitations in her ability to interact with others and in her ability to concentrate, persist, or maintain pace. R. 59. Plaintiff had no limitations in her ability to understand, remember, or apply information or in her ability to adapt or manage herself. *Id*. Dr. Cormier thus concluded that Plaintiff's depression and anxiety were non-severe impairments. R. 59.

On October 24, 2017, on reconsideration, state agency consultant Jessy Sadovnik, Psy.D. made the exact same findings regarding Plaintiff's depression and anxiety as Dr. Cormier. R. 76-77.

The ALJ considered the four broad areas of functioning set out in the disability regulations for evaluating mental disorders in finding that Plaintiff's depression and anxiety were not severe impairments. R. 15. The four broad areas are: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. 20 C.F.R. § 404.1520a(c). The ALJ found no limitations in three of the areas. R. 15. For understanding, remembering, or applying information, the ALJ relied on evidence in the record that Plaintiff exhibited unimpaired memory when tested based on Dr. Coleman's

treatment notes from the May 8, 2018 session.  R. 15, 1214.  As for interacting with others, in concluding that Plaintiff had no limitation, the ALJ cited a Function Report in which Plaintiff reported that she did not have any problems getting along with family friends, neighbors, or others. R. 15, 223.[1] Plaintiff also reported being able to get along well with authority figures and being able to finish for what she starts. R. 223-24. As for the ability to adapt or manage oneself, Plaintiff's Function Report indicated that Plaintiff did not have difficulties with bathing, grooming, feeding, or using the restroom by herself. R. 15, 220, 226-27.  For concentrating, persisting, or maintaining pace, the ALJ found Plaintiff to have a mild limitation. R. 15.  The ALJ explained that although there was no objective evidence in the record of a deficit in this area, Plaintiff consistently reported having decreased concentration and given Plaintiff's mental and physical symptoms, she would likely have mild limitations in concentrating, persisting, or maintaining pace. *Id*.  As a result, the ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety were not severe impairments because they did not cause more than a minimal limitation on Plaintiff's ability to perform mental work activities. R. 15.

The undersigned finds no error in the ALJ's decision to discount Dr. Coleman's opinion. The ALJ's reasoning boils down to the assertion, which is supported by the record, that the overall evidence does not show mental impairments as severe as Dr. Coleman paints in the Medical Assessment of Ability to do Work-Related Activities Form.  Not a high standard, substantial evidence consists of such relevant evidence that a reasonable person might accept as adequate to support the conclusion reached. *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Substantial

---

[1] On August 8, 2017, Plaintiff's husband completed a Function Report on Plaintiff's behalf. Exhibit R. 219-230. About a week earlier, on July 26, 2017, Plaintiff's husband also completed a Supplemental Pain Questionnaire on her behalf. R. 201-08.  In that questionnaire, Plaintiff stated that she had to dictate her words to her husband because she was unable to type for any length of time due to pain and stiffness in her hands caused by lupus, fibromyalgia, and a joint replacement.  R. 204.

evidence supports the ALJ's determination as to Dr. Coleman's opinion, and this Court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *See Schink v. Comm'r*, 2019 WL 4023639, *6 (11th Cir. 2019).

### B. The ALJ's Evaluation of the Medical Opinions Regarding Plaintiff's Fibromyalgia and Lupus

Plaintiff's second claim of error focuses on the ALJ's evaluation of the opinions of Drs. Adriana Valbuena Valecillos and Maria Fernanda Carpintero regarding the limiting effects of Plaintiff's lupus and fibromyalgia.

Plaintiff argues that the ALJ failed to evaluate Plaintiff's fibromyalgia pursuant to Social Security Rule 12-2p, which provides guidance on how to evaluate fibromyalgia claims. Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869 at *2 (July 25, 2012). Fibromyalgia is a particularly unique impairment in that it "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The "hallmark" of fibromyalgia is therefore "a lack of objective evidence." *Id*. at 1211; *see also Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003) (noting that "there are no objective tests which can conclusively confirm [fibromyalgia]"). Because of this, the lack of objective clinical findings alone is insufficient to support the ALJ's rejection of an opinion as to a claimant's functional limitations  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010); *see also Green-Younger*, 335 F.3d at 105-08 (because fibromyalgia is "a disease that eludes [objective] measurement," it was improper for ALJ to discredit treating doctor's opinion based on lack of objective evidence).

Here, the ALJ did not simply rely on the absence of objective evidence of Plaintiff's fibromyalgia to deny benefits. Rather, the ALJ relied on the marked inconsistency between Plaintiff's subjective complaints of pain and symptoms and other evidence in the record. Most notably, the ALJ stressed the significant disparity between what Plaintiff testified to at the hearing and what was shown by the medical evidence regarding her use of an assistive device. At the hearing before the ALJ, the Plaintiff appeared with a seated walker and testified that she required the use of a walker since 2014 and used it full time for ambulation, even at home, since 2016. R. 46. Under oath, Plaintiff stated, "Since 2016, I use [a walker] 24 hours, 7 days a week. Before that I was using it whenever we went out for any length of time, and I had to stand for any length of time." *Id*. However, as the ALJ emphasized, the record is replete with evidence showing Plaintiff was often noted to have "normal gait with no mention of the use of an assistive device." R. 20, 708, 711, 714, 718,719, 722, 725, 733, 738, 743, 748, 1301, 1325, 1337, 1359, 1453, 1488. Other than a few instances where Plaintiff appeared at a doctor's office with assistance,[2] Plaintiff's doctors generally described her as having normal gait and walking without assistance. Although fibromyalgia "can wax and wane so that a person may have bad days and good days," not everyone diagnosed with fibromyalgia is so disabled as to be completely unable to work, and the inconsistency between the evidence of record and Plaintiff's report that she used an assistive device round the clock is too huge to ignore. In addition to this blatant inconsistency, the ALJ noted other aspects of the record that did not support Plaintiff's claim of pain so severe and persistent that it rendered her unable to work. The ALJ's reasons for discrediting Plaintiff's testimony included conservative treatment history in which Plaintiff's doctors advised that she lose weight, walk, swim, exercise and attend physical therapy for pain relief, conservative medications, her response

---

[2] For example, physical exam findings from December 5, 2017 and December 4, 2018 indicated that Plaintiff was assisted by her husband. R. 1461, 1516.

to treatment, and the exertional limits given by the state agency medical consultants (which were consistent with the RFC reached by the ALJ). "A diagnosis of fibromyalgia alone does not establish disabling limitations." *Jones v. Saul*, 2020 WL 1704411, at *21 (N.D. Fla. Apr. 6, 2020). The ALJ provided "explicit and adequate reasons" for discrediting Plaintiff's subjective complaints and these findings are supported by substantial evidence. *Dyer*, 395 F.3d at 1210 (internal quotation marks omitted).

Plaintiff points to the severe limitations assessed by Dr. Adriana Valbuena Valecillos and Dr. Maria Fernanda Carpintero and argues that the ALJ erred in discounting these medical opinions. Plaintiff began receiving medical care from the University of Miami Health Center ("UMHC") on or about August 2014. R. 339, 460-69. Plaintiff was examined by, or received treatment from, several physicians there including Drs. Valecillos, Tamar S. Ference, and Andrew Lawrence Sherman from the Department of Physical Medicine and Rehabilitation, and Dr. Carpintero from the Department of Rheumatology. These physicians primarily evaluated Plaintiff's lupus and fibromyalgia. Treatment records from 2014 to 2018 show that Plaintiff often reported severe pain and exhibited certain symptoms of fibromyalgia and lupus such as 18/18 tender points, pain throughout her body, and fatigue. R. 763. Specifically, progress notes from UMHC show that Plaintiff saw doctors approximately every two to three months between September 2014 and December 2017. R. 341-472, 704-769, 1450-1463. During this time, Plaintiff complained of generalized pain and fatigue. She reported that her pain ached worse when standing or walking but improved when laying down. R. 716, 720, 760. Plaintiff primarily saw Dr. Ference for fibromyalgia and Dr. Carpintero for her lupus, although she would occasionally see other physicians. Plaintiff was prescribed various medications,[3] often advised to exercise to help with

---

[3] Plaintiff also received ketorolac injections on at least three visits between November 2015 and June 2, 2016. R. 376, 391, and 404.

her body aches and fatigue, and was referred to physical therapy. R. 334, 345, 359, 393, 395, 402, 441, 715, 719, 1454. On a visit with Dr. Carpintero on March 9, 2017, Plaintiff said she had not been able to exercise or do physical therapy due to fatigue, R. 723, however a progress note a few months later indicated that she planned to buy a treadmill and would resume exercising when her primary care physician cleared her.  R. 705. Plaintiff's physical examinations regularly showed normal motor strength and normal gait with no assistive device.  R. 708, 710-11, 714, 719, 722, 725, 743, 748, 751.

On December 5, 2017, Plaintiff saw Dr. Valecillos, a board-certified doctor in physical medicine and rehabilitation, for generalized pain. R. 1103. Plaintiff reported feeling fatigued and having significant pain all over body, with numbness and a tingling sensation in different part of her body. Plaintiff said she had discontinued Savella, a medication recommended by Dr. Ference, but had noticed an improvement of her pain when she was taking it. R. 1103, 1450.  Plaintiff reported that her primary care physician had "tried different combinations with function" that were not successful. R. 1104.  Dr. Valecillos examined Plaintiff and reported that Plaintiff's gait was slow and antalgic and that she was assisted by her husband. R. 1108.  Plaintiff's range of motion in all extremities was within their functional limits but with pain. *Id*. Notably, Plaintiff had no synovitis (inflammation) in her joints.   *Id*. Dr. Valecillos' assessment was that Plaintiff's fibromyalgia was not well controlled.  R. 1109.  Dr. Valecillos wrote that she had a lengthy conversation with Plaintiff in which they discussed all treatment options, including nonpharmacologic treatments. R. 1109.  Dr. Valecillos referred Plaintiff to acupuncture, instructed Plaintiff to restart Savella, and provided Plaintiff a refill for clonazepam to use for pain as needed. *Id*.

Plaintiff did not see Dr. Valecillos again until a year later on December 4, 2018. R. 1510. During that visit, Plaintiff complained of significant pain, along with numbness and tingling. Plaintiff had discontinued use of Savella and Gabapentin and started on Vimpat, Wellbutrin, and Prestige with some improvement. R 1510. The Lidoderm patch also brought her some relief. *Id*. Dr. Valecillos made the same medical findings as before and referred Plaintiff to pain management. R. 1517.

Six days later, on December 10, 2018, Dr. Valecillos completed a medical source statement. R. 1218-19. The form began with a section that listed various symptoms and asked the physician completing the form to check any of the symptoms that applied to their patient. Dr. Valecillos checked, among other things, that Plaintiff had a history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, sensation of swollen hands, chronic fatigue, memory loss,[4] and an inability to ambulate effectively. R. 1218. Dr. Valecillos stated that Plaintiff was unable to walk a block at a reasonable pace on a rough or uneven surface, walk enough to shop, or climb a few steps at a reasonable pace with the use of a handrail as examples of an inability to ambulate effectively. *Id*. According to Dr. Valecillos, Plaintiff could not work any hours per day, could stand or sit for 15 minutes at one time, but could not stand or sit in a work day for any amount of time, and could not lift on either an occasional or frequent basis. *Id*. at 1218-19. Also, Plaintiff could only raise her left or right arm over shoulder level occasionally. *Id*. at 1219. Dr. Valecillos wrote, "Patient has been evaluated in our department since 2014 due to chronic pain syndrome secondary to fibromyalgia" and is "not responding to conservative and alternative treatment." *Id*.

---

[4] This seems to come from Plaintiff's self-reporting. Plaintiff expressed to Dr. Valecillos frustration with memory deficits, R. 1510, and was referred to a neuropsychologist for an evaluation. R. 1517.

The ALJ found Plaintiff's fibromyalgia to be a severe impairment, but found that the medical record did not support the extreme functional limitations assessed by Dr. Valecillos. R. 20.  In assessing Plaintiff's RFC, the ALJ found the following with respect to Dr. Valecillos' opinion:

> Adriana Valecillos, M.D., who treated the claimant since 2014 for her fibromyalgia, opined in December 2018 that the claimant could not work and could only stand for 15 minutes at a time or sit for 15 minutes at a time. (Exhibit 20F). The undersigned finds this opinion not very persuasive because it is unsupported by the physical examination findings throughout the record and treatment notes.

R. 19.

The ALJ did not err in evaluating Dr. Valecillos' opinion, although she was incorrect about how long Plaintiff had treated with Dr. Valecillos.    The record shows that Plaintiff was seen by doctors in UMHC's Department of Physical Medicine and Rehabilitation since 2014.  Plaintiff only saw Dr. Valecillos twice, however, once in 2017 and once in 2018.  R. 1456, 1510.  Moreover, as described above, the record shows fairlyconservative medical treatment.   Plaintiff was prescribed medications and instructed to exercise for pain relief.  R. 423, 715, 727, 733, 744, 753, 760, 827, 1091.  Further, although the record indicates that Plaintiff's fibromyalgia was worsening and she had 18/18 tender points, treatment notes and physical examinations from November 2016, June 2017, and October 2018 revealed that Plaintiff had a normal gait and could ambulate without an assistive device. R. 714, 883, 1488.   Plaintiff also showed normal posture and 5/5 motor strength. R. 714, 883, 1488.  *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (findings by some physicians that the plaintiff's physical exams were within normal limits supported the ALJ's decision that the plaintiff's fibromyalgia and other impairments were not disabling).

Dr. Valecillos' opinion was also inconsistent with some of the other medical opinions in the record during the relevant time period that the ALJ found to be more persuasive.   Medical consultant Alicia Blando, M.D. completed a Physical Residual Capacity Assessment form on June 1, 2018. R. 1181-88. Dr. Blando opined that Plaintiff could occasionally lift 20 pounds, could frequently lift 10 pounds, could stand or walk for a total of 4 hours in an 8-hour workday, and could sit for about 6 hours in an 8-hour workday. R. 1182.  Dr. Blando further opined that Plaintiff could occasionally climb ramps, could never climb ladders/rope/scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch, crawl. R. 1183.  Dr. Blando also assessed environmental limitations. R. 1185. Dr. Blando explained, and the ALJ noted, that the RFC accommodated Plaintiff's fibromyalgia and other conditions.  R. 1187.  State agency consultants Leslie Pearlstein, M.D., and David Guttman, M.D. made similar findings.  They opined that Plaintiff could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk for 4 hours and could sit for about 6 hours in an 8-hour workday. R. 61-66, 78-83. Plaintiff could occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently balance, could occasionally stomp, kneel, crouch, or crawl. The ALJ found these opinions to be consistent with the overall medical record.  R. 19.

Plaintiff also argues that the ALJ failed to properly evaluate Dr. Carpintero's opinion regarding the functional limitations lupus caused on her ability to work. Lupus is an inflammatory autoimmune disease that mainly affects joints and muscles, but can also affect skin, blood cells, kidneys, and the brain. R. 466. Sunlight sensitivity, arthritis, fatigue or depression are common symptoms. *Id*. Some of Plaintiff's lupus-related symptoms (*i.e.*, fatigue and joint pain) were similar to her fibromyalgia-related symptoms. *See Silas v. Saul*, 2019 WL 4686802, at *4 fn. 5 (M.D. Fla. Sept. 26, 2019) (recognizing that "[l]upus is sometimes called 'the great imitator' because its

symptoms are often the same symptoms of rheumatoid arthritis and fibromyalgia, among other illness.").

Dr. Carpintero began treating Plaintiff on August 1, 2014 and diagnosed Plaintiff with systemic lupus erythematosus (SLE). R. 464-68, 472. Plaintiff saw Dr. Carpintero approximately every three months between 2014 and 2017. R. 357, 362, 378, 389, 400, 407, 425, 433, 448. On January 9, 2019, Dr. Carpintero completed a medical source statement. R. 1375-76. Dr. Carpintero circled answers on the form indicating that Plaintiff suffered from SLE and had moderate manifestations of lupus on her skin. Dr. Carpintero circled that Plaintiff had no manifestation of lupus in her kidneys and but also circled that Plaintiff had a moderate manifestation of lupus in her kidneys. According to Dr. Carpintero, lupus affected Plaintiff's "joints- arthritis, hematologic," and she experienced significant fatigue and malaise. R. 1375. Dr. Carpintero also circled that Plaintiff was unable to ambulate effectively and unable to perform fine and gross movements effectively. R. 1376. Dr. Carpintero opined that Plaintiff could not stand for any amount of time, could sit for only 15 minutes at one time, could work no hours per day, could never bend or stoop, and could occasionally perform fine or gross manipulation. Dr. Carpintero also wrote that Plaintiff was not on long-term steroid therapy because she could not tolerate steroids due to severe gastritis. Lastly, Dr. Carpintero commented, "Patient with SLE and fibromyalgia with chronic pain difficult to control with any treatment." *Id*.

Although the ALJ specifically found Plaintiff's lupus to be a severe impairment, R. 14, she did not agree with Dr. Carpintero's functional limitations:

> The undersigned also considered the opinion of Maria Carpintero, M.D. dated January 2019 who indicated that the claimant could not stand for any amount of time, never bend or stoop, and occasionally perform fine and gross manipulation bilaterally. (Exhibit 28F). The undersigned finds this opinion not persuasive as it is inconsistent with the physical examination findings, and it is internally inconsistent with respect to lupus and involvement with the kidneys. Moreover, the

opinion is given in a form provided by the claimant's representative who failed to
define terms such as "occasionally," and the opinion is therefore vague and unclear.
R. 19.

Substantial evidence supports the ALJ's decision to discount Dr. Carpintero's opinion. As

the ALJ noted, the physical exam findings did not support the extreme exertional and postural

limitations set forth in Dr. Carpintero's opinion. To begin, Plaintiff's alleged inability to stand for

any amount of time is belied by the record which indicated that Plaintiff could ambulate

effectively. Between 2014 and 2017, Dr. Carpintero consistently reported that Plaintiff ambulated

with a normal gait and used no assistive device. Further, in January, May, August, and November

of 2018, pulmonologists Michael Layton, M.D., and Mary Layton, ARNP, also reported that

Plaintiff was "ambulating normally." R. 1337, R. 1342, 1346, 1360, R. 1363.  Moreover, Dr.

Carpintero's opinion that Plaintiff could not perform fine or gross manipulation is inconsistent

with examinations which revealed no such functional limitations. For example, Dr. Carpintero

found only "trace synovitis in wrist and ankles" in 2018, R. 753, and mild left hand swelling on a

June 2016 and November 2016 visits, R. 362, 378.  On most visits her physical assessment of

Plaintiff revealed no clubbing, edema, synovitis in her extremities. The pulmonologists similarly

found no clubbing, cyanosis, or edema in Plaintiff's extremities. R. 1337, 1342, 1346, 1360, 1363.

Further, as the ALJ noted, the form Dr. Carpintero used failed to define certain terminology which

made the  opinion "vague and unclear," and Dr. Carpintero gave conflicting responses about

whether Plaintiff's lupus impacted her kidneys.  Plaintiff argues that Dr. Carpintero may have

mistakenly selected kidney involvement instead of liver involvement because Plaintiff might have

had abnormal liver function.  That argument is unconvincing.  The ALJ considered the evidence

in the record, including Dr. Carpintero's opinion, such as it was.  The ALJ was not required to

speculate about what the doctor may have meant.  The undersigned sees no error in the ALJ's analysis on these points.

Further, Plaintiff's own statements and the relatively conservative treatment for Plaintiff's lupus undermines Dr. Carpintero and Plaintiff's statements about the extent of the limiting symptoms of her lupus.  Plaintiff was prescribed medication including Voltaren, Zofran, Flexeril, Lidoderm, Lopressor, and Folvite.  R. 826-27.  Although the record shows that Plaintiff's medications would change due to side effects or issues with her other medical impairments, in visits with Dr. Carpintero  in March and June of 2017, treatment notes revealed "improvement of [Plaintiff's] disease activity with current regime." R. 715, 727.  Plaintiff was advised that any type of light exercise would be helpful for her body aches, lupus, and fatigue.  R. 873.  Indeed, in addition to continually advising Plaintiff to avoid the sun, Dr. Carpintero regularly emphasized the importance of exercise to Plaintiff. R. 715, 727, 733, 744, 753, 760.  In a July 2018 visit with Dr. Sherman, Plaintiff indicated that she was able to perform low-intensity recreation and demonstrated full motor strength despite experiencing pain in her upper and lower limbs. R. 1474-75. Contrary to Dr. Carpintero's finding that Plaintiff could not perform fine or gross movements (such as those required to take care of personal hygiene or prepare simple meals), Plaintiff reported being able to do both. In her Function Report and Supplemental Pain Questionnaire, Plaintiff stated that she could take care of her personal hygiene. R. 206, 220. Then, at the hearing on March 25, 2019, two months after Dr. Carpintero's opinion, Plaintiff testified that she could prepare simple meals like a sandwich. R. 39.

The ALJ considered Plaintiff's lupus and its effect on Plaintiff's ability to work. Substantial evidence supported the ALJ's decision to discount Dr. Carpintero's opinion, which assessed more

limitations than her treatment notes and the record supported.  For these reasons, Plaintiff's claim as to the ALJ's evaluation of the medical opinions should be denied.

## II.     The ALJ's RFC Finding

Plaintiff next argues that the ALJ's RFC "considerably overestimates" Plaintiff's functional capacities, including her ability to sit, stand, and walk on a sustained basis.  Plaintiff argues that the ALJ's assessment is inconsistent with the opinions of Drs. Coleman, Carpintero, Valecillos and the record as a whole.   DE 24 at 26-27.   Defendant contends that substantial evidence supports the ALJ's "highly restrictive" RFC finding, citing the ALJ's explanation of her assessment.  DE 26 at 18.

The undersigned finds Plaintiff's argument here unavailing. As previously discussed, the ALJ's finding that the Drs. Coleman, Valecillos, and Carpintero's opinions were not persuasive is supported by substantial evidence. Therefore, the ALJ did not err in failing to include in the RFC the limitations articulated by those doctors.  The ALJ's decision demonstrates that the ALJ took Plaintiff's impairments into account in developing a highly restrictive RFC. As previously noted, the ALJ found that Plaintiff had the RFC to perform light work with additional postural and environmental limitations. In her decision, the ALJ explained:

> The above residual functional capacity is supported by some of the claimant's own subjective allegations, the relatively benign objective findings, the conservative degree of treatment the claimant has received, the claimant's response to treatment, the exertional limitations given by the State agency medical consultants, and the record as a whole which do not support the severity of several of the claimant's allegations nor does it exhibit the types of ongoing medical treatment or objective abnormalities one would expect for a totally disabled individual.

R. 20.

Substantial evidence supports this RFC assessment. The ALJ reviewed treatment notes showing that Plaintiff was instructed to exercise and told and that any light exercise would help

with her lupus, body aches, and pain, R. 17-18, 715-16, 873, though Plaintiff reported that she was only able to do low-intensity recreation such as swimming, R. 1474.   The ALJ also reviewed physical examination findings showing that Plaintiff was ambulating normally, her extremities showed no abnormalities, R. 1359-60. In July 2018 Plaintiff had lower back pain on flexion and extension, an antalgic gait, reduced sensation in her right lower limb, and 5/5 motors strength. R. 1475. Three months later, although Plaintiff had 18/18 tender points for fibromyalgia, her gait was now normal, her station erect, and reflexes were normal. R. 1488. The ALJ further found Plaintiff's Worker's Compensation forms persuasive.  R. 20. Plaintiff was injured at work on April 20, 2016, and her examining physicians had to complete treatment/status reporting forms.  R. 526-554. The ALJ found that the forms were consistent with Plaintiff's injures at the time and noted that they showed how Plaintiff's condition subsequently improved.  R. 20. For example, a May 6, 2016 treatment report showed Plaintiff had several functional limitations, including bending, kneeling, standing, and walking. R. 553. By February 1, 2017, however, a treatment report stated that Plaintiff had no functional limitations at all. R. 529.

The ALJ did not assess mental restrictions because Plaintiff's anxiety and depression did not cause more than a minimal limitation on her ability to perform basis mental work activities. R. 15.   Specifically, the ALJ noted that Plaintiff exhibited unimpaired memory when tested, Plaintiff reported that she had no problems getting along with others, and had no limitations grooming, bathing, or feeding herself.  Nor did she need reminders to shop or prepare meals.  In sum, the ALJ's determination that Plaintiff had the residual functional capacity to perform light work with additional conditions is supported by substantial evidence and should therefore be affirmed.

### III.     The ALJ's Evaluation of Plaintiff's Subjective Complaints

Lastly, Plaintiff argues that the ALJ failed to adhere to the applicable Social Security regulations in assessing Plaintiff's allegation of pain.  Social Security Ruling 16-3p sets out a two-step process the ALJ must follow when considering a claimant's symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment.  Social Security Ruling 16-3p Titles II And XVI: Evaluation of Symptoms in Disability Claims, 82 FR 49462-03.  Second, once a medically determinable impairment has been shown that could reasonably produce the claimant's pain or symptoms, the ALJ must evaluate the intensity, persistence, or limiting effects to determine the extent the symptoms limit the claimant's ability to perform work-related tasks. *Id*.  Further, the ALJ will consider both the claimant's statements about his or her pain or symptoms and the record to determine the extent to which the claimant's alleged functional limitations due to pain or other symptoms can reasonably be accepted as consistent with the medical record. 20 C.F.R. § 404.1529(a).

The Eleventh Circuit has also established a three part "pain standard" when a claimant seeks to establish disability through subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.  The claimant's subjective testimony of pain supported by medical evidence that satisfies the pain standard is by itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ discounts a claimant's subjective complaints, the ALJ must articulate adequate and specific reasons for doing so. *Id*. Determining the credibility of a claimant's testimony is the province of the ALJ and the reviewing court "will not disturb a clearly articulated

credibility finding supported by substantial evidence[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ adequately and specifically found Plaintiff's subjective complaints about her pain were inconsistent with the medical record. Specifically, the ALJ found that Plaintiff's statements regarding her impairments and their effect of her ability to work were "not entirely supported in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the medical history, the findings made on examination, and the reports of the reviewing, treating and examining physicians." R. 20. This Court discussed these inconsistencies and discrepancies in large part above. The ALJ's conclusion that Plaintiff's subjective complaints were only partially credible is supported by substantial evidence. Although Plaintiff argues that her pain was debilitating, the record does not indicate that she is incapable of performing any work. *See Homrighouse v. Astrue*, 2009 WL 3053705, at *11 (M.D. Fla. Sept. 18, 2009) ("Pain and fatigue are symptoms that *may* cause functional limitations. However, allegations of pain and fatigue must be considered with the other evidence in the record to determine the extent to which they impact a claimant's ability to perform work related activities."). Further, as noted previously, the medical treatment Plaintiff received suggests Plaintiff's symptoms were less severe than she claimed. *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) ("conservative treatment can support discrediting subjective symptoms even in cases where, like here, a claimant alleges pain from both fibromyalgia and other conditions."); *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (conservative treatments such as prescription medications, physical therapy, diet and exercise supported ALJ's finding the claimant's subjective complaints only partially credible).

Accordingly, Plaintiff's last claim of error should be denied.

## CONCLUSION

Based on the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (DE 24) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case.  **If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 18th day of July, 2021.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE